UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TONYA RAMSDELL,

    Plaintiff,

v.                                                                                          Case No. 8:20-cv-3043-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

## **O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1983, completed two years of college, and has past relevant work experience as a nurse, retail manager, and emergency room technician. (R. 26, 74, 317). In March 2017, the Plaintiff applied for DIB and SSI, alleging

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, replacing the former Commissioner, Andrew M. Saul. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Mr. Saul as the Defendant in this suit.

disability as of February 2017 due to asthma, anemia, anxiety, depression, "hypocalemia," sleep apnea, chronic back pain, obsessive compulsive disorder, mast cell disorder anaphylaxis, and postural orthostatic tachycardia syndrome (POTS). (R. 273–74, 284–97). The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. (R. 74–134).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted hearings on the matter in March 2020 and July 2020. (R. 38, 65, 152–53). The Plaintiff was represented by counsel at both proceedings and testified on her own behalf at the second one. (R. 38, 43–58, 65). A different vocational expert (VE) testified at each hearing as well. (R. 58–62, 70–73).

In a decision issued in July 2020, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in February 2017; (2) had the severe impairments of asthma, obesity, sleep apnea, mast cell activation syndrome disorder, and arrhythmias associated with POTS status-post SVT ablation; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform a reduced range of sedentary work subject to

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

certain physical and environmental limitations;³ and (5) based on the VE's testimony, could not engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. (R. 17–27). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 28).

The Appeals Council denied the Plaintiff's request for review. (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).⁴ A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r*

---

³ These limitations included that the Plaintiff could lift and carry no more than ten pounds frequently and less than ten pounds occasionally; could stand and/or walk no more than two hours and sit for no more than six hours in an eight-hour workday, with normal breaks; must avoid even moderate exposure to pulmonary and/or environmental irritants and noxious fumes; and must avoid all exposure to industrial hazards and the use of hazardous industrial machinery. (R. 20).

⁴ Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

*of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the

---

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff's challenges on appeal are that the ALJ improperly evaluated the opinions of the Plaintiff's treating physicians, Dr. Jennifer Fergeson and Dr. Saeed Shahzad. (Doc. 20 at 12–15, 20–21). After a thorough review of the record and the parties' submissions, the Court finds that the Plaintiff's challenge has merit at least with respect to Dr. Fergeson's opinion.

As noted above, the ALJ's task at step four is to determine the claimant's RFC and her ability to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, an ALJ must decide what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

In arriving at this finding, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)).[6] Medical opinions are statements from physicians, psychologists, or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). In rendering this determination, an ALJ must take into account: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) the degree to which the doctor's opinion is consistent with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). While an ALJ is required to assess all of these factors, he need not explicitly address each of them in his decision. *Lawton*, 431 F. App'x at 833.

---

[6] Although this regulation has been amended effective March 27, 2017, the new regulations only apply to applications filed on or after that date. *See* 20 C.F.R. § 404.1520c. Because the Plaintiff submitted her application in November 2015, the older version of the regulation is controlling here.

6

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2)). Treating doctors' opinions are accorded the most deference because there is a greater likelihood that such providers will "be able to give a more complete picture of the [claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1527(c)(2)). As a result, the ALJ must give a treating doctor's opinion substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Schink*, 935 F.3d at 1259 (citations omitted). If an ALJ elects to "disregard a treating physician's opinion, . . . he must clearly articulate [his] reasons for doing so," *Hargress*, 883 F.3d at 1305 (internal quotation marks and citation omitted), and those reasons must be buttressed by substantial evidence, *Phillips*, 357 F.3d at 1241. In the end, irrespective of the nature of a physician's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *See Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

In this case, the Plaintiff established care with Drs. Shahzad and Fergeson in May 2018 and August 2018, respectively. (R. 983, 1132). That same year, each physician completed a Physical Residual Functional Capacity Questionnaire in connection with the Plaintiff's DIB and SSI applications. (R. 1132–35, 1137–40). Dr. Fergeson opined in her questionnaire, in pertinent part, that because of the Plaintiff's impairments, the Plaintiff would be required to miss work "more than four days per month," would need to avoid "strong odors and irritants," and would have to sit with her legs elevated at a forty-five-degree angle for two-to-four hours during an eight-hour workday. (R. 1134–35). Dr. Shahzad stated in his assessment, in relevant part, that the Plaintiff could sit for less than two hours and stand or walk for less than two hours in an eight-hour workday, would need to take unscheduled breaks, and would need to elevate her legs while sitting for prolonged periods of time. (R. 1139–40).

At step four in his decision, the ALJ referenced Drs. Shahzad and Fergeson's opinions and largely discounted them. (R. 25). In particular, the ALJ determined:

> [T]he undersigned gives little weight to the statements by the [Plaintiff]'s treating providers, Dr. Fergeson and Dr. Shahzad, because they are not supported by the clinical findings from their own examinations, nor are they consistent with the overall medical evidence of record. In particular, the undersigned notes that . . . Dr. Shahzad's progress notes from examinations only document a decrease range of motion with dorsiflexion in the claimant's right ankle, which was unchanged in any of his subsequent notes; notwithstanding that this was inconsistent with the exam results from the claimant's other providers. Moreover, while he prescribed a wheelchair at the request of the claimant, there is no indication that it was medically necessary, as the claimant did not utilize this device when attending her other providers, as evidence[d] by the

8

   absence of mention of this and the normal gait ambulation noted by the
   other providers.

*Id.* (citations omitted).

  The Plaintiff now argues that the ALJ failed to adequately set forth his justification for according less than substantial or considerable weight to Dr. Fergeson's assessments and that the ALJ's rationale for declining to credit both of the physicians' opinions is not buttressed by substantial evidence.[7] (Doc. 20 at 12–15, 20–21). The Court agrees with the Plaintiff at least as to Dr. Fergeson's opinion.

  As the Plaintiff points out, while the ALJ described Dr. Fergeson's RFC questionnaire as "not supported by the clinical findings from [her] own examinations," the ALJ did not "clearly articulate" the reasons that led him to arrive at this determination. *Hargress*, 883 F.3d at 1305. Indeed, the ALJ did not provide *any* explanation regarding the specific factual support upon which he relied in mostly rejecting Dr. Fergeson's opinion of the Plaintiff's restrictions. Instead, he focused exclusively on the degree to which Dr. Shahzad's assessments cohered with Dr. Shahzad's own records, as well as those of other providers. (R. 25).[8] As a result, the Court is unable to engage in a meaningful review of the ALJ's analysis of Dr. Fergeson's opinion, and remand is thus required. *See Schink,* 935 F.3d at 1262–63

---

[7] There is no dispute that Drs. Shahzad and Fergeson are treating physicians. The ALJ described them as such in his decision (R. 25), and the parties cite the treating physician rule in their joint memorandum (Doc. 20 at 12–13, 16).

[8] It cannot be credibly argued that the ALJ intended his comparative assessment of Dr. Shahzad's opinion against the record evidence to have any application to his evaluation of Dr. Fergeson's opinion. To her credit, the Commissioner appears to acknowledge as much in her briefing on the matter. (Doc. 20 at 16 n.3).

(finding that "to discount a treating physician's opinion because it [was] 'inconsistent with [the source's] own medical records,' an ALJ must identify a genuine 'inconsisten[cy]'" and that the ALJ's statement that the treating doctors' questionnaires were "inconsistent with other substantial evidence of record" is insufficient where the "ALJ failed to clearly articulate what evidence led [her] to [that] conclusion") (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Hubbell-Canamucio v. Comm'r of Soc. Sec.*, 2016 WL 944262, at *4 (M.D. Fla. Mar. 14, 2016) (deeming deficient an ALJ's conclusory statements that a treating doctor's opinion was inconsistent or not bolstered by the record) (citing *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012)); *Freeman v. Comm'r of Soc. Sec.*, 2013 WL 6244527, at *7 (M.D. Fla. Dec. 3, 2013) (stating that the ALJ failed to establish good cause for discounting a treating doctor's opinion where the ALJ's "conclusions [we]re unsubstantiated by reference to specific evidence in the record, and provid[ed] the reviewing Court with little guidance in determining whether the findings [were] supported by substantial evidence") (citations omitted); *Paltan v. Comm'r of Social Sec.*, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.") (citation omitted); *see also Lawton*, 431 F. App'x at 834 (finding that the ALJ's statement that he "carefully considered all the testimony and exhibits [was] not sufficient" to establish good cause for attributing little weight to a treating physician's opinion) (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In an effort to avoid this conclusion, the Commissioner cites to other portions of the record which she submits buttresses the ALJ's assessment of Dr. Fergeson's opinion. (Doc. 20 at 15–20). This approach is unavailing. It is well settled that a court can only rely on what an ALJ has set forth in his decision, not on post-hoc rationalizations offered by the Commissioner on appeal. *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (per curiam) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)); *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (per curiam) (same) (quoting *Owens*, 748 F.2d at 1516).

To the extent the ALJ's failure to provide clearly articulated and sufficiently supported reasons for according "little weight" to Dr. Fergeson's opinion is subject to a harmless error analysis,[9] that standard is not met here. At the initial hearing, Plaintiff's counsel posed a hypothetical to the VE[10] as to whether an individual with the same RFC, age, education, and work experience as the Plaintiff and who also

---

[9] *See Simmons v. Saul*, 2020 WL 1235614, at *4–5 (N.D. Ala. Mar. 10, 2020) (citations omitted) (noting that the Eleventh Circuit has not applied a "harmless-error analysis to an ALJ's failure to consider a treating source's opinion" but has issued "multiple unpublished opinions that apply [a] harmless-error analysis to the failure to mention or weigh a treating source's opinion"); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("We may affirm the ALJ's decision even if the ALJ made an error, so long as the error was harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'") (citation omitted); *Freeman v. Comm'r of Soc. Sec.*, 2021 WL 665976, at *2 (M.D. Fla. Feb. 19, 2021) (noting that an ALJ's error in articulating weight assigned to a treating physician's opinion may not always be fatal) (citing *Hanback v. Comm'r, Soc. Sec. Admin.*, 581 F. App'x 840, 841 (11th Cir. 2014) (per curiam)).

[10] Plaintiff's counsel elicited this testimony from the same VE whose testimony the ALJ cited in his decision. *Compare* (R. 26) *with* (R. 58, 61–62).

11

needed to elevate her legs at forty-five degrees for two-to-four hours (as Dr. Fergeson required) would be able to secure employment in the national economy:

> Counsel:  And if[,] while the person was in sedentary work [citing Dr. Fergeson's RFC questionnaire], . . . they needed to have their legs elevated at a [forty-five] degree angle while seated, what impact, if any would this have upon their ability to do [the identified representative] jobs?
>
> VE:  Again, the DOT[11] and [Selected Characteristic of Occupations (SCO)][12] don't address that. . . . The elevation of the legs is more of an ergonomic and ability to address the workstation area, again, the DOT, SCO do not address that, however, *the research in my [thirty-seven] years of direct job placement have indicated individuals cannot safely and effectively sustain that degree of elevation of the legs to perform even sedentary work activity*.
>
> Counsel:  And what if [the claimant] were required to [maintain this degree of elevation for] two to four hours out of an eight hour day, would that have a negative impact upon their ability to engage and sustain full time work activity?
>
> VE: *Yes, with that degree of elevation it would*.

(R. 61–62) (emphasis added).

As this excerpt from counsel's colloquy with the VE demonstrates, the VE found there may not be any jobs in the national economy which the Plaintiff could perform based on Dr. Fergeson's opinion that the Plaintiff needed to elevate her legs

---

[11] The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.

[12] The SCO—known formally as the *Selected Characteristic of Occupations Defined in the Revised Dictionary of Occupational Titles*—is the companion volume to the DOT.  Social Security Ruling 00-4P, 2000 WL 1898704, at *1 (Dec. 4, 2000).

at forty-five degrees for two-to-four hours. As such, the ALJ's failure to clearly articulate and buttress his evaluation of Dr. Fergeson's opinion cannot be considered harmless.

In light of the above findings, the Court need not address the Plaintiff's remaining argument that the ALJ improperly weighed Dr. Shahzad's opinion. *See Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address the claimant's remaining arguments due to the conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other claims raised) (citations omitted). On remand, however, the ALJ must consider all the record evidence in accordance with the governing case law and the applicable regulatory provisions in evaluating the Plaintiff's impairments. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that, on remand, the ALJ must reassess the entire record).

### IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2. The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court reserves jurisdiction on the question of attorney's fees and costs pending a further motion that conforms to the District's Standing Order. *See In re: Administrative Orders of the Chief Judge*, No. 3:21-mc-1-TJC (Doc. 43) (Dec. 7, 2021).

SO ORDERED in Tampa, Florida, this 4th day of November 2022.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record